UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| RAJNISH SINGH KOONER, | Case No.: 17CV1940 W (BGS) |
|---|---|
| Plaintiff, | **ORDER ON DISCOVERY DISPUTES** |
| v. | |
| BMW OF NORTH AMERICA, LLC, | [ECF 19, 21, 27] |
| Defendant. | |

## I. Introduction

The parties were given the opportunity to file a joint statement concerning Plaintiff's Second Set of Requests for Production Numbers 47 and 49-85. (ECF 19.[1]) This joint statement contained hundreds of pages of exhibits. To the extent they are relevant to each party's arguments, the court is relying on each party's representations of those exhibits in the body of their joint statement to make its findings. The parties were also given an opportunity to file a joint statement regarding Plaintiff's late disclosure of it an expert report. (ECF 27). The Court addresses the disputes below.

---

[1] The parties also filed supplemental briefing at the Court's request. (ECF 21.)

1

## II. RFP No. 47

Plaintiff seeks documents reflecting the number of repurchases Defendant offered to consumers of the 2013 BMW 750i whose vehicles suffered similar problems as Plaintiff's vehicle. Plaintiff contends such documents are relevant to show that Defendant's failure to comply with the Song Beverly Consumer Warranty Act ("Act") was willful. (ECF 19 at 2-3[2]). Defendant argues that the elements of the Act concern only the subject vehicle, and not the condition of other vehicles. Further, companies are responsible only for evaluating Plaintiff's specific case and repair history in order to avoid a finding of willfulness. The condition of other vehicles is not a factor. (ECF 19 at 10-12). In the alternative, Defendant, in support of its argument that Plaintiff's request is over burdensome and not proportional, proffers the number of man hours it would spend to conduct such discovery for the 1,054 same make, model and year vehicles as Defendant's. (*See id.* at 13-14.)

The Act provides that a buyer who is damaged by a failure to comply with their obligations under the Act or under an implied or express warranty may bring an action for damages and other legal and equitable relief. Cal. Civ. Code § 1794(a). "If the buyer establishes that the failure to comply was willful, the judgment may include, in addition to the amounts recovered under subdivision (a), a civil penalty which shall not exceed two times the amount of actual damages." § 1794(c).

///

Subdivision (c)'s willfulness civil penalty may be awarded when a jury determines that the manufacturer "knew of its obligations but intentionally declined to fulfill them." *Ibrahim v. Ford Motor Co.*, 214 Cal. App. 3d 878, 894 (1989). It does not include moral components like being blameworthy, having malice, or engaging in moral delinquency. *Id.* "However, 'a violation is not willful if the defendant's failure to replace or refund

---

[2] The Court uses the CM/ECF pagination unless otherwise noted.

was the result of a good faith and reasonable belief the facts imposing the statutory obligation were not present.'" *Schreidel v. Am. Honda Motor Co.*, 34 Cal. App. 4th 1242, 150 (1995) (quoting *Kwan v. Mercedes–Benz of N. Am.*, 23 Cal. App. 4th 174, 185 (1994)). In *Schreidel*, the court approved the following jury instructions on willfulness:

> If you find that defendant [Honda] failed to comply with its obligations under the law previously read to you and if you determine that the failure to comply was willful, your verdict may include a civil penalty against such defendant.
>
> The word willful when applied to the intent with which an act is done or omitted and as used in these instructions, simply implies a purpose or willfulness to commit the act or to make the omission in question.
>
> The word willful does not require an intent to violate the law nor does it require an intent to injure or damage another or to acquire an advantage over another.
>
> In making this determination you may consider whether defendant [Honda] knowingly failed to follow its obligations to plaintiff required by law including whether it *unreasonably* failed to replace the subject vehicle or refund the purchase price when obligated to do so."

*Id.* at 1253–54. (emphasis added).

In *Schreidel*, the court's willfulness analysis focused entirely on the defendant's conduct regarding the subject vehicle.

> The record demonstrates that Honda made no serious attempt to discover the cause of Schreidel's complaints. Rather the record shows that Honda tended to attribute ulterior motives to Schreidel and failed to diagnose the problems even though Schreidel brought the car into a Honda dealership for repair over an eleven month period on six separate occasions. In late September 1980, the service manager at the dealership advised Schreidel that the matter was out of his hands and that a field representative would contact her. Despite repeated calls and letters, no representative contacted her or examined the car until May 1991, two days before an arbitration hearing Schreidel had instituted to obtain a replacement. Then the representative asked to look at the car in order to fix it, not to replace it. The customer relations department characterized her complaint as a

> customer problem and closed its file when the dealership could not duplicate her complaints. No procedure was ever instituted to replace her car.

*Id.* at 1254

In *Kwan*, the statutory obligation the plaintiff claimed the defendant willfully violated was to replace the vehicle or refund the purchase price under California Civil Code § 1793.2(d)(2). *Kwan*, 23 Cal. App. 4th at 185. The court concluded that "such a violation is not willful if the defendant's failure to replace or refund was the result of a good faith and reasonable belief the facts imposing the statutory obligation were not present." *Id.* That court explained that "[t]his might be the case, for example, if the manufacturer reasonably believed the product did conform to the warranty, or a reasonable number of repair attempts had not been made, or the buyer desired further repair rather than replacement or refund." *Id.* Like the court in *Schreidel*, the *Kwan* court also focused its willfulness analysis on the defendant's conduct towards the subject vehicle. The non-conformity involved a gurgling sound which the defendant addressed by installing a new model heater core to fix the problem. In its finding that there was sufficient evidence that defendant acted in good faith and reasonably, the court noted that defendant's technicians were unaware of any instances in which replacing the original heater core with the new model failed to eliminate the gurgling. *Id.* at 186.

In *Jensen v. BMW of North America*, the court concluded there was sufficient evidence to support the jury's express finding BMW willfully violated the Act. 35 Cal. App. 4th 112, 136 (1995). Part of its analysis focused on evidence that showed BMW knew Jensen's car had not been repaired after six attempts over a period of nearly three years. *Id.* The court also emphasized evidence that BMW had issued a technical bulletin alerting the dealerships about a brake shimmy in the same model vehicle as plaintiff's. *Id.* at 135. The court found that the jury could reasonably infer that BMW's replacement of brake parts provided temporary relief from the shimmy, but did not fix the fundamental defect in the braking system. *Id.* at 135.

These cases stand for the proposition that the same nonconformity in other like vehicles may be relevant to the issue of willfulness in that a jury could reasonably infer that the Defendant's repairs did not resolve the nonconformity. As such it would be unreasonable for a defendant to not repurchase the vehicle. *See e.g. id.* at 136 (Among the factors to be considered by the jury in determining if the defendant's violation was willful for not repurchasing the vehicle is whether the manufacturer knew the vehicle had not been repaired within a reasonable time or after a reasonable number of attempts). The relevancy of the same nonconformities in other like vehicles goes to notice to the defendant that given a fundamental defect in the same model vehicles as a subject vehicle, the repairs did not fix the vehicle. Therefore, failure to repurchase it was willful. The court now applies this litmus test to RFP No. 47.

RFP No. 47 in pertinent part asks for all documents listing all repurchases of the same year, make, and model as subject vehicle that actually contained any of the same or similar concerns and issues for which Plaintiff presented the subject vehicle for repair as evidenced by the repair orders. (ECF 19-1 at 173.) The RFP then lists nonconformities which were the subject of repair orders. (*Id.*)

The court first finds that the request for "similar concerns" is over broad. The relevance of other vehicle discovery is in the notice given to the Defendant as to the exact same repair concern that existed in both the subject vehicle and other like vehicles. The alleged reasonable inference that a jury could make is that the Defendant was on notice that the subject vehicle was not repaired because there was a fundamental defect in the same make and model vehicle as found Plaintiff's vehicle. Therefore, the Defendant's failure to repurchase was willful. "Similar" non-conformities do not create such a reasonable inference, and therefore this RFP is over broad.

Further, even narrowing the RFP to repurchases of the same make, model and year vehicles as Plaintiff's, the court finds the RFP to be overly broad and burdensome under Rule 26(b)(1). Repurchases of others vehicles entails a lot of irrelevant, collateral information. It would be rare that there was a repurchase based on the same alleged

5

nonconformities as the subject vehicle. In this sense, the hunt for that vehicle(s) is more akin to a fishing expedition because most repurchases involve various nonconformities. Even assuming that some of the repurchases also included some of the alleged nonconformities claimed in this case, the relevance is minimal since the purpose of this discovery is to prove that the Defendant knew of a fundamental defect in all same make and model vehicles, and therefore did not repair the subject vehicle. Further, to the extent other vehicle information is at all relevant, the cases look to whether technical bulletins have been issued alerting dealerships of a fundamental defect. *See e.g. Jensen*, 35 Cal. App.4th at 135 (BMW issued a technical bulletin which alerted dealerships about a brake shimmy in the 528e model). However RFP No. 47 does not seek that type of information.

Apart from the minimal probative value, such a request is over burdensome and not proportional under Rule 26(b)(1). As to the importance to the issues at stake, the relevance of other vehicles' repurchases at most would go to the jury's consideration as to whether to infer that given the prevalence of the problems in other vehicles, the Defendant was therefore on notice that he did not repair the vehicle under the Act. However, the case law's primary focus on the issue of willfulness is not on other vehicles, rather on a defendant's conduct towards the subject vehicle. Therefore, the court gives little weight to the importance of this discovery to proving willfulness. Further, the amount in controversy, roughly $84,000, (ECF 19 at 12), is not proportional to the burden and expense to comply with RFP No. 47. The Defendant calculates conservatively in order to do a review of the records of 1,054 same make, model and year vehicles to be over 3,000 man hours in labor. (*Id*. at 13-14). Finally, Plaintiff has access to more relevant evidence to the issue of notice to Defendant than RFP No. 47, namely service bulletins produced by the Defendant of widespread defects and non-conformities in all 2013 BMW 750is. This is the type of evidence which provides a reasonable inference that the Defendant was on notice that the subject vehicle was not repaired, and failure to repurchase was willful. As such the court denies RFP No. 47 for these reasons.

### III. N63 Class Action (RFP Nos. 49-85)

Plaintiff is requesting in these RFPs class discovery in the case of *Joon Bang, et al. v. BMW of North America, LLC*, Case No. 2:15-CV-6945 (Dist. N.J.) (hereinafter *Bang*). (ECF 19 at 3-4.) He claims that the problems experienced by the class members are identical to those experienced by Plaintiff. (*Id.* at 3.) Specifically, he argues *Bang* discovery is relevant to the issue of willfulness for purposes of civil penalties. (*Id.* at 3-4.) Plaintiff argues the *Bang* documents prove that Defendant knew of widespread defects in vehicles equipped with an N63 engine. (*Id.* at 4.) Therefore, Defendant's conduct was willful in not repurchasing the subject vehicle. (*Id.*) Plaintiff additionally alleges that *Bang* discovery is relevant because it shows Plaintiff was less likely to have caused the defects in the subject vehicle. (*Id.*)

In sum, Defendant contends these RFPs are not relevant in that discovery is limited to the subject vehicle, and that Plaintiff does not have to prove the cause of the defect. (ECF 19 at 10-15.) Further, Defendant stresses that the *Bang* class members' vehicles, some 84,000 of them, were equipped with an N63 engine, which Plaintiff's vehicle did not have. (*Id.* at 10-11.) Plaintiff's vehicle had an N63T engine. In fact, Plaintiff's vehicle is not covered by the class settlement in *Bang*. Defendant also contends such discovery is not proportional to the needs of the case under Rule 26(b)(1). (*Id.* at 12-15.) Defendant objects to this discovery on the issue of willfulness claiming the condition of other vehicles is not a factor. (*Id.* at 10-15.)

The court first addresses Plaintiff's claim that widespread existence of similar defects in other BMW vehicles equipped with the exact same N63 engine makes it less likely that Plaintiff caused the defects in the subject vehicle. (ECF 19 at 4). In *Jensen*, the court addressed whether there was substantial evidence to support the jury's verdict that BMW's repairs were inadequate and that the brake problem was not caused by Jensen's driving. 35 Cal. App. 4th at 134-135. As discussed above, as to whether BMW had repaired the vehicle under the Act, the court focused on a technical bulletin which alerted the dealerships to a brake shimmy in the same model vehicle as the plaintiff's. *Id.*

at 135. The brake shimmy problem was the focus of repair efforts. *Id.* at 135. The court found that the jury could reasonably infer that the defendant's replacement of various parts provided temporary relief, but never resolved a fundamental defect in the braking system. *Id.* As to whether the defect in the brakes was caused by Jensen's abusive driving, the court focused entirely on the evidence presented regarding her driving. *Id.*

Similarly, the issue Plaintiff raises regards whether the similar vehicle problems in *Bang* are relevant to show Defendant's repairs were not adequate under the Act, and therefore refute Defendant's contention that Plaintiff's post-sale modifications did not cause the repair problems. The court finds a fatal defect to Plaintiff's RFPs for this purpose. Plaintiff's vehicle does not have the same engine as the *Bang* class members. This is further corroborated by the fact that Plaintiff's N63T engine is not covered by the class settlement in *Bang*, which vehicles had an N63 engine. Since Plaintiff's vehicle is not the same as the *Bang* class members', *Bang* members' problems cannot be attributed to causing Plaintiff's.

Further, the *Jensen* court focused on whether there was evidence of a fundamental defect in the subject vehicle that allowed the jury to infer the repairs were inadequate. The *Jensen* court noted that there was a technical bulletin sent to dealerships alerting them about the exact nonconformity, but focused primarily on BMW's interaction with the subject vehicle. In the present case, Plaintiff provided a chart comparing the subject vehicle problems to those experienced in *Bang*. That chart shows that there were service bulletins issued in *Bang*. Plaintiff states that the subject vehicle required repairs to the exact components as those in *Bang*, and was serviced by BMW's technicians pursuant to bulletins issued for N63. (ECF 19 at 5-7.) Defendant points out that these service bulletins also identified N74 and N63TU engines as well as N63 and N63T engines. (*Id.* at 11.) Such bulletins only illustrates that they are different engines, which must be separately identified. (*Id.* at 11). Pursuant to *Jensen*, and the cases discussed above, the main relevant areas of discovery focus on the subject vehicle and the Defendant's conduct thereto. To the extent other vehicles' defects are relevant, service bulletins

appear to be the extent of the relevancy.  Plaintiff has not cited any case that allows such widespread discovery into other vehicles' nonconformities.  To the extent Plaintiff believes that the service bulletins cited in his chart also apply to the subject vehicle, then Plaintiff already has the relevant discovery.   Therefore, as to sufficiency of the repairs under the Act, the court finds the requested discovery not relevant.

Plaintiff contends that widespread similar defects in the *Bang* vehicles make it less likely that the Plaintiff caused the defects in the subject vehicle.  Under § 1794.3 of the Act "any defect or nonconformity …caused by the unauthorized or unreasonable use of the goods is not recoverable under the Act."  As discussed above, the *Jensen* court focused entirely on the plaintiff's conduct towards the vehicle in addressing this section of the Act.  Similarly, the court finds Plaintiff's conduct towards the subject vehicle post sale to be the relevant inquiry as to this issue.  Similar defects in vehicles that have a different engine provide no probative value regarding what Plaintiff did to his vehicle post sale.

As to the relevancy of this discovery to the issue of willfulness for purposes of civil penalties, the court references the law and reasoning it applied in denying RFP No. 47.  The Court finds no probative value to the requested discovery on this issue in that it involved a different engine than the subject vehicle.

Assuming arguendo that the RFPs have limited relevancy, for the reasoning stated in denying RFP No. 47, the court finds Plaintiff's RFPs to be overly burdensome, not probative to any issues at stake, and not proportional to the needs of the case.[3]

Given the court's rulings herein, the court finds as moot any other objections raised by Defendant.

---

[3] Defendant proffers that there are approximately 84,000 vehicles with the N63 engine. Complying with the RFPs would put a tremendous burden on the Defendant.  It would be exponentially higher than the cost related to compliance with RFP No. 47. (ECF 19 at 14-15; *see e.g.* ECF 19-2 at 5).

## IV. Plaintiff's Late Expert Report[4]

Defendant seeks an order from the Court precluding Plaintiff's expert because the expert report was disclosed two weeks late. (ECF 27 at 4-5.) In seeking to preclude Plaintiff's expert, Defendant argues that it has been prejudiced in a way that cannot be remedied by additional time. (ECF 27 at 5.) Specifically, Defendant argues Plaintiff has gained a tactical advantage in preparing his report after having had an opportunity to review Defendant's expert's report. (*Id.*) In essence, the simultaneous disclosure provided for in the scheduling order has been lost. However, Plaintiff indicates that his expert "has not received a copy of BMW's expert report in this matter [and] did not rely on BMW's expert report in forming his opinions." (*Id.* at 3.) Plaintiff also argues that it would be severely prejudiced by Defendant presenting unchallenged expert testimony at trial.

The Court finds that based on the information currently before it, any prejudice to Defendant from the late disclosure may be remedied by additional time to depose Plaintiff's expert and the setting of that deposition at Defendant's convenience. Accordingly, Plaintiff's expert is not excluded based on the late disclosure of the expert report, however, Defendant may have additional time to complete the deposition of Plaintiff's expert. If Defendant needs extension of any other deadlines, the parties may file a joint motion[5] identifying the needed extensions. The Court additionally orders that Defendant may broadly question Plaintiff's expert at his deposition regarding whether he reviewed or was otherwise aware of any information or conclusions in Defendant's

---

[4] Counsel for the parties initially contacted the Court regarding this dispute on July 16, 2018. (ECF 25.) The Court contacted the parties on July 20, 2018 and provided a tentative – to allow the late expert report, but provide Defendant reasonable extensions to compensate for the delayed production – and indicated that if they did not accept the tentative, they could file a Joint Statement. (ECF 26.)

[5] The Court would expect Plaintiff will make every effort to accommodate any modifications to the schedule Defendant may need as a result of Plaintiff's failure to comply with the scheduling order.

expert's report before completing his own report. If that testimony reflects Plaintiff's representations to the Court in this Joint Motion were in any way inaccurate, the Court would expect Defendant to renew its request to exclude the expert and seek other appropriate sanctions.

**IT IS SO ORDERED.**

Dated: August 16, 2018

Hon. Bernard G. Skomal
United States Magistrate Judge